UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEHMAN BROTHERS HOLDINGS,
INC.,

     Plaintiff/
     Counter-Defendant,

v.                     CASE NO. 8:09-CV-623-T-17EAJ

KEY FINANCIAL CORPORATION,

     Defendant/
     Counter-Plaintiff.

_____/

ORDER

This cause is before the Court on:

Dkt. 37 Motion for Summary Judgment
Dkt. 38 Motion for Partial Summary Judgment
Dkt. 39 Declaration
Dkt. 40 Declaration
Dkt. 41 Request for Oral Argument
Dkt. 42 Response
Dkt. 43 Declaration
Dkt. 44 Declaration
Dkt. 45 Response
Dkt. 49 Reply
Dkt. 50 Declaration

In the First Amended Complaint (Dkt. 9), Plaintiff Lehman
Brothers Holdings, Inc. ("LBHI") alleges that Lehman Brothers
Bank, FSB ("LBB") purchased mortgage loans from Defendant Key
Financial Corporation ("Key"), pursuant to Loan Purchase
Agreements dated 4/6/2006.  The Loan Purchase Agreements
specifically incorporate the terms and conditions in the Seller's
Guide of Lehman's agent, Aurora Loan Services, LLC.  Defendant
Key sold mortgage loans to Lehman Brothers Bank, FSB, including
the loans referenced in Exhibit A.  After the sale, Lehman
Brothers Bank, FSB assigned all rights and remedies to Plaintiff

Case No. 8:09-CV-623-T-17EAJ

Lehman Brothers Holdings, Inc. ("LBHI").

The First Amended Complaint includes Count I, breach of contract, Count II, specific performance, and Count III, breach of express warranty.  The basis of jurisdiction is diversity.

Plaintiff LBHI seeks the award of damages in an amount to be determined at jury trial, with interest.  Plaintiff LBHI also seeks a decree of specific performance, requiring Defendant to repurchase the loans identified in Exhibit A to the Amended Complaint.  Plaintiff LBHI seeks a declaration that Defendant Key is required to repurchase the referenced loans, and Defendant Key is required to compensate Plaintiff LBHI for all actual and consequential damages resulting from Defendant's breaches of the representations and/or warranties and Early Payment Default provisions of the Agreements and Seller's Guide.  Plaintiff LBHI further seeks the award of reasonable  attorney's fees and costs incurred in litigating this case.

Counter-Plaintiff Key has filed a Counterclaim, which includes Count I, for breach of contract, and Count II, for fraud.  Key alleges that Lehman Brothers Bank, FSB entered into a binding contract with Key on or before June 13, 2007, that Key performed its obligations under the contract, but Lehman Brothers Bank, FSB did not, causing Key to suffer damages of at least $583,780.  Counter-Plaintiff Key seeks the award of actual and consequential damages, prejudgment interest and other appropriate relief.

In Count II, Counter-Plaintiff Key alleges that Lehman

2

Case No. 8:09-CV-623-T-17EAJ

Brothers Bank, FSB made intentional material misrepresentations
and omissions as to the Wolf loan, on which Key relied to its
detriment.  Counter-Plaintiff Key alleges that Lehman Brothers
Bank, FSB represented that LBB would purchase the Wolf loan, at
the time of its misrepresentations LBB had no intention of
purchasing the Wolf loan, and the misrepresentations were
intentionally made to defraud Key.  Counter-Plaintiff Key
further alleges that LBB's actions constitute willful misconduct,
malice, wantonness, or an entire want of care which raises the
presumption of conscious indifference to consequences, and such
actions were done with a specific intent to cause harm, for which
an award of punitive damages is sought.  Counter-Plaintiff Key
seeks the award of financial damages, punitive damages,
prejudgment interest, and other appropriate relief.

I.  Standard of Review

    Summary judgment should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits,
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law.
Fed.R.Civ.P. 56(c).

> "The plain language of Rule 56(c) mandates
> the entry of summary judgment after adequate
> time for discovery and upon motion, against a
> party who fails to make a showing sufficient
> to establish the existence of an element
> essential to that party's case, and on which
> that party will bear the burden of proof at
> trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

3

Case No. 8:09-CV-623-T-17EAJ

The appropriate substantive law will guide the determination
of which facts are material and which facts are...irrelevant.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All
reasonable doubts about the facts and all justifiable inferences
are resolved in favor of the non-movant.  See Fitzpatrick v. City
of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is
genuine "if the evidence is such that a reasonable jury could
return a verdict for the non-moving party."  See Anderson, 477
U.S. at 248.  But, "[i]f the evidence is merely colorable...or is
not significantly probative...summary judgment may be granted."
Id. at 249-50.

III.  Statement of Facts

    1.  Lehman Brothers Bank, FSB ("LBB") entered into Loan
Purchase Agreements dated April 6, 2006 with Defendant Key
Financial Corporation (Dkt. 37-1)(Loan Purchase
Agreement(Servicing Released Transactions) and Loan Purchase
Agreement (Bulk Sales/Servicing Released Transactions)).  The
Loan Purchase Agreements incorporated the terms of the Seller's
Guide of LBB's loan servicing agent, Aurora Loan Services, LLC,
which sets forth additional duties and obligations to be
performed by Defendant Key (Dkt. 43, Exh. B).

    2.  Aurora Loan Services, LLC is an indirect subsidiary of
Plaintiff LBHI and a direct subsidiary of LBB.  Aurora served as
the administrative agent of the correspondent program for LBB.
(Dkt. 43, Exh. B, Sec. 100).  Aurora was authorized and directed
by LBB and Plaintiff LBHI to enforce any obligations owed to them

4

Case No. 8:09-CV-623-T-17EAJ

by parties selling mortgage loans in which LBB and/or LBHI have
an interest.  (Dkt. 43, par. 7).  Aurora performed post-purchase
audits of loan files in the event a possible breach of a
representation, warranty or covenant was discovered.  Plaintiff
LBHI is the parent corporation of LBB and Aurora (Dkt. 43, par.
10).

       3.  The Loan Purchase Agreements and the Seller's Guide
specify the duties and obligations of the parties with respect to
the sale and purchase of mortgage loans, including purchase
price, delivery and conveyance of the mortgage loan and mortgage
loan documents, examination of mortgage loan files and
underwriting, representations and warranties concerning the
parties and individual mortgage loans purchased or sold, and
remedies for breach.

       4.  In Section 7, the Loan Purchase Agreement(Servicing
Release Transactions) provides:

              **Section 7.**  <u>Notices</u>.  All demands, notices,
              and communications hereunder shall be in
              writing and shall be deemed to have been duly
              given if mailed by registered or certified
              mail, return receipt requested, of, if by
              other means, when received by the other party
              at (i) the address given in the Seller's
              Guide if to LBB, and (ii) as follows if to
              Seller:

              Attn: Jeffrey Dell
                    Key Financial Corporation
                    P. O. Box 36
                    Peel, AR   72668

              or such other address as may hereafter be

                                  5

Case No. 8:09-CV-623-T-17EAJ

furnished to the other party by like notice.
Any such demand, notice or communication
hereunder shall be deemed to have been
received on the date delivered to or received
at the premises of the addressee (as
evidenced, in the case of registered or
certified mail, by the date noted on the
return receipt.)

5.  In Section 8, the Loan Purchase Agreement provides:

**Section 8.  Governing Law.  This Agreement
and the Seller's Guide shall be construed in
accordance with the laws of the State of New
York and the obligations, rights and remedies
of the parties hereunder shall be determined
in accordance with the laws of the State of
News York, except to the extent preempted by
Federal law.**

6.  In Section 711, the Seller's Guide provides:

**711 INDEMNIFICATION AND THIRD PARTY CLAIMS**

In addition to any repurchase and cure
obligations of Seller,...Seller shall
indemnify Purchaser and Purchaser's
designee...from and hold them harmless
against all claims, losses, damages,
penalties, fines, claims, forfeitures,
lawsuits, court costs, reasonable attorney's
fees, judgments and any other costs, fees and
expenses that the Purchaser may sustain in
any way related to or resulting from any act
or failure to act or any breach of any
warranty, obligation, representation or
covenant contained in or made pursuant to
this Seller's Guide or the Loan Purchase
Agreement by any agent, employee,

6

Case No. 8:09-CV-623-T-17EAJ

> representative or officer of Seller or
> Seller's correspondent....

(Dkt. 43, Ex. B).

   7.   Section 712 of the Seller's Guide states:

> **712 SURVIVAL OF REMEDIES**
>
> It is understood and agreed that Purchaser's
> remedies for breach of the representations,
> warranties or covenants set forth herein
> and/or in the Loan Purchase Agreement shall
> survive the sale, and delivery of the related
> Mortgage Loan to Purchaser and Funding of the
> related Purchase Price by Purchaser, and will
> continue in full force and effect,
> notwithstanding any termination of this
> Seller's Guide and the related Loan Purchase
> Agreement, or any restrictive or qualified
> endorsement on any Note or Assignment of
> Mortgage or loan approval or other
> examination of or failure to examine any
> related Mortgage Loan File by Purchaser.

(Dkt. 43, Exh. B).

   8.   Section 713.3 of the Seller's Guide provides:

> 713.3 **ASSIGNMENT**
>
> Purchaser shall have the right to assign its
> rights and duties under the Loan Purchase
> Agreement and this Seller's Guide to any
> party without the consent of Seller.
> Purchaser shall notify Seller in writing of
> any such assignment.  Seller shall have no
> right to assign its rights or duties under
> the Loan Purchase Agreement or this Seller's
> Guide without Purchaser's prior written
> consent.  Purchaser also may assign
> separately to any other party any or all

Case No. 8:09-CV-623-T-17EAJ

> representations, warranties or covenants made
> by Seller to Purchaser in the Seller's Guide
> or Loan Purchase Agreement, along with any or
> all of Purchaser's remedies available against
> the Seller for Seller's breach of any
> representation, warranty, or covenant
> hereunder, including, without limitation, the
> repurchase and indemnification remedies.  Any
> such party shall be an intended third party
> beneficiary of those representations,
> warranties, covenants and remedies.

9.   During the relevant time, Defendant Key Financial
engaged in mortgage lending and selling mortgage loans on the
secondary market.

10.   Aurora Loan Services, LLC, LBB's agent, granted
Defendant Key Delegated Underwriting Authority ("DUA").   DUA
means that Key Financial had the ability to perform the
underwriting process prior to closing and selling a loan to LBB.
The Seller's Guide provides that Section 715 of the Seller's
Guide applies to mortgage loans delivered pursuant to a Seller's
Delegated Underwriting Authority.

11.   Defendant Key Financial Corporation sold the loans on
which the claims in the Amended Complaint are based to Lehman
Brothers Bank, FSB (Dkt. 9, Exh. A) on July 9, 2007 (Davis Loan)
and July 10, 2007 (Padgett Loan )(Dkt. 43-6).

12.   Lehman Brothers Bank, FSB assigned its rights and
remedies to Plaintiff LBHI in an Assignment Agreement dated
September 2, 2008 (Dkt. 37-3).   LBB did not assign its
liabilities under the Loan Purchase Agreement to Plaintiff LBHI.
(Dkt. 43, par. 11).

8

Case No. 8:09-CV-623-T-17EAJ

13.   As to the two loans, Defendant Key made
representations, gave warranties and covenanted certain facts
concerning:

> a) the validity of all mortgage loan
> documentation;
>
> b) the accuracy and integrity of all
> information and documentation concerning
> borrower income, identity, employment,
> credit, assets and liabilities used in making
> the decision to originate the mortgage loans;
>
> c) occupancy by the borrower of the
> properties securing the mortgage loans;
>
> d) the ownership, nature, condition and value
> of the real properties securing the mortgage
> loans;
>
> e) the conformance of the mortgage loans with
> applicable underwriting guidelines and loan
> program requirements.

14.   Defendant Key also represented and/or warranted that no
errors, omissions, misrepresentations, negligence, fraud or other
mistakes or wrongdoing occurred or were committed by any person
involved in the origination of the mortgage, and that no
predatory or deceptive lending practices were used in the
origination of the mortgage loans.

15.   Defendant Key further represented and/or warranted that
Defendant Key had the ability to perform its obligations under,
and satisfy all requirements of the Loan Purchase Agreement and
the Seller's Guide.

9

Case No. 8:09-CV-623-T-17EAJ

16.   Plaintiff LBHI discovered that Defendant Key breached
representations, warranties and covenants under the Agreements
and the Seller's Guide as to Loan Number 2 (Dkt. 9, Exh. A), the
Padgett Loan,  and, through its agent, notified Key of the breach
on September 14, 2007. (Dkt. 43, Exh. F).

17.   The Loan Purchase Agreements and Seller's Guide provide
that, in the event of a breach of representations warranties and
covenants, LBHI or its agent may demand that Defendant Key
repurchase the loan at a certain repurchase price (Dkt. 43, Exh.
B, Section 710).

18.   Plaintiff LBHI demanded that Defendant Key repurchase
the Padgett Loan at the specified purchase price on September 14,
2007 (Dkt. 43, Exh. F).

19.   Defendant Key refused to repurchase the Padgett Loan
and did not comply with its obligations under the Loan Purchase
Agreements and Seller's Guide.

20.   The Loan Purchase Agreements and Seller's Guide also
specify that Plaintiff LBHI or its agent may demand that
Defendant Key repurchase, and Defendant Key shall repurchase,
mortgage loans that become Early Payment Defaults ("EPD").

21.   A loan may become an EPD under the Loan Purchase
Agreements and Seller's Guide in two ways: 1) For loans prior-
approved by the purchaser, the loan becomes an EPD if the
borrower does not make the first monthly payment due within
thirty days of the payment's due date; 2) for loans purchased

Case No. 8:09-CV-623-T-17EAJ

pursuant to the seller's delegated underwriting authority,
eligible for delegated underwriting, or purchased in bulk
transactions, the loan becomes an EPD if the borrower does not
make the first or second monthly payment within thirty days of
each respective payment's monthly due date.  (Dkt. 43, Exh. B).

   22.   Loan Number 1, (Dkt. 9, Exh. A), the Davis Loan, became
an EPD when the borrower did not make the first or second
payments due within thirty days of their due dates.

   23.   Plaintiff LBHI gave written notice that the loan
application contained a misrepresentation of Davis' debts, and
that Defendant Key breached its representation and warranty that
the loan documentation contained no misrepresentations, under
Section 703 of the Seller's Guide.  Plaintiff LBHI demanded that
Defendant Key indemnify Plaintiff on July 10, 2009.  The notice
letter states that the loan liquidated on August 15, 2008 through
the REO process with a loss of $78,126.97.  (Dkt. 43, Ex. F).

   24.   Defendant Key did not indemnify Plaintiff LBHI for
Loan Number 1.

   25.   LBB, through its agent, Aurora Loan Services, LLC,
terminated the Loan Purchase Agreement on June 21, 2007 (Dkt. 37-
2) by a certified letter to Jeffrey Dell, Key Financial
Corporation.  LBB terminated the Agreement because Defendant Key
did not meet the necessary net worth requirements.

   26.   Count I of the Counterclaim is based on the Wolf Loan.
Aurora Loan Services, LLC recommended that the purchase of the

Case No. 8:09-CV-623-T-17EAJ

Wolf Loan be declined on 7/24/2009 (Dkt. 39-11). The "Findings
Summary" of the Special Investigations Referral Form states:

> CC-Loan submitted due to Ryan Youngman,
> supposed employer, has lived with borrower,
> and has purchased properties with her
> previously. Received written verification of
> hand written VOD, faxed computer generated
> VOD to 900#, Received written re-verification
> of VOD. Cosmetology license for the borrower
> shows her at Trishas Barbershop, however,
> verbally verified that borrower no longer
> works there. No VOE for David & Associates,
> however, verbally verified that she is a 1099
> employee with them, which was not disclosed.
> Faxed 4506 - 7/2. Received W-2's and Tax
> Transcriptx, showing undisclosed employer
> "Sand Dollar Corp" for 2005 and 2006.
> Borrower has average annual income of 30K for
> past 2 years, no capacity to make payments on
> the loan. Recommendation to decline.

27.  The "Underwriting Approval Notice" from LBB dated
6/13/2007, attached to Defendant's Counterclaim (Dkt. 14-1),
states:

> "We reserve the right to modify this approval
> or declare it null and void if any
> representations made in the loan file are
> incorrect or incomplete, if any material
> facts appear which have not been previously
> revealed to us or if there is any adverse
> change in the Borrower's credit, outstanding
> obligations or employment, or in the
> value/condition of the property.
>
> This approval for purchase is subject to
> final review of any underwriting conditions
> and the closing package.
>
> Correspondents are reminded that an
> underwriting review by Aurora does not

12

Case No. 8:09-CV-623-T-17EAJ

>            alleviate Seller of Seller's Guide Section 7
>            representations, warranties and covenants."

(Dkt. 14-2, pp. 3-4).

27. Plaintiff LBHI filed Chapter 11 proceedings in the
Southern District of New York on September 15, 2008 (Dkt. 37-4).

28.  Plaintiff LBHI filed suit on September 2, 2009.


IV.  Dkt. 37 Motion for Summary Judgment

A.  Defendant's Motion
     Defendant Key has moved for summary judgment in favor of
Defendant Key and against Plaintiff LBHI.  Defendant Key contends
that all claims asserted by Plaintiff belong to Plaintiff's
bankruptcy estate and may only be brought by Plaintiff's
bankruptcy trustee.  Defendant Key argues that Plaintiff LBHI is
not the real party in interest, and is barred from bringing this
action by Fed. R. Civ. P. 17(a).  Defendant Key argues that the
failure to bring this action in the name of the real party in
interest is not the result of mistake or excusable neglect, and
Plaintiff LBHI is not entitled to leave to amend its complaint.
Defendant Key seeks entry of judgment in its favor on Plaintiff's
claims.

     Defendant Key argues that the entry of summary judgment in
favor of Defendant Key on Plaintiff's claims is otherwise
appropriate because LBHI did not notify Defendant Key of the
default as to the Davis Loan and did not notify Defendant Key of

Case No. 8:09-CV-623-T-17EAJ

the foreclosure sale as to the Padgett loan.

B.  Plaintiff's Response

    Plaintiff LBHI responds that a United States Bankruptcy
Judge expressly authorized Plaintiff to pursue litigation, such
as this case, to maximize recovery for the bankruptcy estate.
Plaintiff LBHI relies on the November 5, 2008 Order of the
Bankruptcy Court (Dkt. 40, Exh. B), and the August 5, 2009 Order
of the Bankruptcy Court (Dkt. 40, Exh. C).  The Order of
November 5, 2008 authorizes LBHI to operate its businesses and
manage its assets and properties as debtors in possession
pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.
The Order of August 5, 2009 authorized LBHI to compromise and
settle claims with respect to the origination or purchase of
residential mortgage loans.  The related Motion discussed the
litigation of such claims, as well as presuit resolution.

    As to Defendant Key's assertion of lack of notice, Plaintiff
argues that proper notice was sent, and that receipt of notice is
not a condition precedent to determine Defendant Key's liability.
Plaintiff LBHI argues that the Loan Purchase Agreements
specifically provide that Key Financial's repurchase obligation
and indemnification shall exist "regardless of (i) the dates of
Purchaser's discovery and notice to Seller of the breach and
Purchaser's demand for any remedy..." (Dkt. 43, Exh. B, 710-711).
Plaintiff LBHI argues that the Agreements do not specify that a
demand must be made within a specific time frame to trigger
repurchase or indemnification. Id.

14

Case No. 8:09-CV-623-T-17EAJ

C.   Discussion

1) Real Party In Interest

     The Court has taken judicial notice of the Orders of the
Bankruptcy Court entered in Chapter 11 Case No. 08-13555(JMP).
The Order of November 5, 2008 authorizes the Debtors, inter alia,
pursuant to sections 105(a), 327, 328, and 330 of the Bankruptcy
Code, to the extent deemed necessary by the Debtors, to employ,
nunc pro tunc to September 15, 2008, "Ordinary Course
Professionals" as listed on Exhibit C of the Order, in the
ordinary course of their businesses in accordance with the
procedures set forth in the Order.  The ordinary course of
business of Plaintiff LBHI included buying mortgages in the
secondary market, and pursuing breach of contract and tort claims
associated with the purchase of those mortgages.

     The Court notes the following preliminary statement of the
Debtor's business, in Debtor's Motion (Dkt. 40, Exh. C):

               8.  Prior to the Commencement Date, the
               Debtors acquired thousands of mortgage loans
               secured by residential real properties
               ("Residential Mortgage Loans") for the
               purpose of selling such loans into special
               purpose entities that would issue securities
               secured by pools of mortgage loans to
               investors.  The Debtors also held some of the
               acquired Residential Mortgage Loans for their
               own account.  Some of the Residential
               Mortgage Loans have gone into default or have
               otherwise caused the Debtors to incur losses
               under circumstances that have implicated the
               representations, warranties or covenants made
               in connection with the origination or sale of

                              15