UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LEHMAN BROTHERS HOLDINGS INC.,**

    Plaintiff,

v.                                                       Case No.: 8:09-CV-623-T-17EAJ

**KEY FINANCIAL CORPORATION,**

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the court are Plaintiff's **Motion for Final Default Judgment and Attorneys' Fees** (Dkt. 61) and Plaintiff's proposed **Default Final Judgment** (Dkt. 69 Ex. 1). The motion was referred to the undersigned for an evidentiary hearing and a report and recommendation (Dkt. 62). An evidentiary hearing has been held. Defendant did not respond to the motion or attend the evidentiary hearing. For the reasons stated at the hearing and those explained below, it is **RECOMMENDED** that Plaintiff's motion be granted and that Plaintiff's proposed default judgment be entered with the changes recommended below.

### Background

In 2006, Lehman Brothers Bank, FSB ("LBB"), a subsidiary of Plaintiff, entered into loan purchase agreements with Defendant Key Financial Corporation. Under the purchase agreements, LBB purchased the two loans at issue in this case: (1) a loan to borrower Kristoffer Davis with an account number ending in 7228 (the "7228 loan"); and (2) a loan to borrower Debra Padgett with an account number ending in 6119 (the "6119 loan"). LBB assigned its rights and remedies under the purchase agreements to Plaintiff.

In the purchase agreements, Defendant made warranties regarding matters such as borrower income, borrower credit, and compliance with applicable loan-underwriting guidelines. The purchase agreements provide that in the event of a breach, Defendant is obligated to repurchase the loans from Plaintiff. After Plaintiff discovered that Defendant breached certain warranties in the purchase agreements, Plaintiff filed the present suit. Plaintiff's amended complaint includes counts for breach of contract, specific performance, and breach of express warranty. On March 31, 2011, the court granted summary judgment in favor of Plaintiff on its breach of contract claim and determined that New York law governs the purchase agreements. The summary judgment order did not address Plaintiff's counts of specific performance or breach of warranty.

On February 14, 2011, Defendant's counsel moved to withdraw. The court granted the motion on the same day and directed Defendant to obtain new counsel as required by the Local Rules. See M.D. Fla. R. 2.03(e). The motion to withdraw stated that numerous attempts to contact Defendant went unanswered and that Defendant's former in-house counsel reported that Defendant shut down as of September 30, 2010. Prior to that time, Defendant was active in defending this case. Defendant answered the complaint, participated in discovery, and filed a motion for summary judgment.

Defendant is currently unrepresented. On May 2, 2011, the court granted Plaintiff's motion for entry of clerk's default against Defendant for failure to obtain counsel as required by the court's February 14, 2011 order. On May 18, 2011, Plaintiff filed a motion requesting: (1) entry of a default judgment; (2) an award of damages, including prejudgment and post-judgment interest; and (3) an award of attorney's fees.

Under the purchase agreements, Defendant is obligated to indemnify Plaintiff for all

damages, attorney's fees, and expenses incurred as a result of Defendant's breach (Dkt. 61 Ex. 1 at 27-28, 44). Plaintiff is seeking an award of $400,018.21 in damages: $86,554.21 in damages for the 7228 loan; $220,357.76 in damages for the 6119 loan; and an award of prejudgment interest at a rate of 9%.

Plaintiff's motion includes a declaration from John Baker, an employee of Plaintiff's wholly-owned subsidiary, LAMCO LLC, and numerous supporting attachments (See Dkt. 61 Ex. 1 "Declaration of John Baker" dated May 13, 2011). Baker's declaration explains Plaintiff's damage calculations as well as the accompanying attachments. Baker provided testimony (via telephone) at the evidentiary hearing on the default judgment motion. Baker also submitted a supplemental declaration following the evidentiary hearing to update interest calculations and clarify some of the dates used in the interest calculations (See Dkt. 68 "Supplemental Declaration of John Baker" dated July 11, 2011).[1]

Plaintiff also seeks an award of $47,568.06 in attorney's fees. Plaintiff's motion includes detailed billing records and an affidavit from one of its attorneys attesting to the reasonableness of the hourly rates.

### **Findings of Fact**

The following facts are established by a preponderance of credible evidence:

1. Because the court's summary judgment order determined that Defendant breached the purchase agreements, Defendant was obligated to repurchase the loans (Dkt. 61 at 27).

2. The damage award is calculated using the definition of "Repurchase Price" contained in the

---

[1] Baker's supplemental declaration includes a spreadsheet that details Plaintiff's damage calculations. The spreadsheet contains twenty-seven columns and two rows. The first row refers to the 7228 loan, and the second row refers to the 6119 loan.

purchase agreements:

An amount equal to (I) the greater of the Purchase Price or par multiplied by the outstanding principal balance of the Mortgage Loan as of the Purchase Date; less (ii) the aggregate amount received by Purchaser of reductions and curtailments of the principal balance of the Mortgage Note; plus (iii) any and all interest payable on the outstanding principal balance of the Mortgage Note as of the date of repurchase; plus (iv) any and all expenses, including, without limitation, costs of foreclosure and reasonable attorney's fees, incurred by Purchaser in the exercise by Purchaser of its rights and remedies in connection with the Mortgage Loan, the Mortgaged Property, and/or the Mortgagor, as more specifically identified in this Seller's Guide.

(id. at 44).

3. For both loans, the purchase price (the amount Plaintiff paid for the loans) is greater than the outstanding principal balance as of the purchase date, so damages are calculated using the purchase price. The purchase price of the 6119 loan was $303,547.80, and the purchase price of the 7228 loan was $336,427.24.

4. No principal payments were made on either loan between the time that Plaintiff purchased the loans and the time that the loans were liquidated. If principal payments had been made, they would be deducted from the purchase price to calculate the amount owed.

5. The borrower of the 6119 loan did not make his or her first payment, and Plaintiff liquidated the loan by selling it at a deep discount. The borrower of the 7228 loan also defaulted, so Plaintiff foreclosed on the property securing the loan and sold it. Plaintiff received $91,259.22 for the 6119 loan and $289,171.24 for the 7228 loan.

6. The liquidation amounts were subtracted from the purchase prices to calculate the principal amounts owed to Plaintiff. Plaintiff then added the loan interest owed on the outstanding principal balance of each loan for the time between the borrower's last payment and the liquidation. Plaintiff added $12,523.53 in expenses it incurred with respect to the 7228 loan.

7. Accordingly, before prejudgment interest, Plaintiff is owed $86,554.21 for the 7228 loan, $220,357.76 for the 6119 loan, and a total of $306,911.98 for both loans. These amounts are consistent with the definition of "Repurchase Price" set forth in the purchase agreements.

8. Plaintiff is entitled to prejudgment interest at a rate of 9%.

9. In response to the court's inquiry at the evidentiary hearing, Baker submitted a supplemental declaration that calculates the prejudgment interest using the contractual default date for both loans. Prejudgment interest accrues daily from the default date until the day that judgment is entered. Baker's declaration states that prejudgment interest accrues on the 7228 loan at a rate of $21.34 per day and on the 6119 loan at a rate of $54.33 per day. Thus, the prejudgment interest accrues at a total rate of $75.67 per day.[2]

10. Under the purchase agreements, the default date is thirty days from the earlier of the date that Plaintiff notified Defendant of a breach of the purchase agreements or the date that Defendant knew of the breach (Dkt. 61 at 27-28). For the 6119 loan, Plaintiff notified Defendant of a purchase agreement breach on September 14, 2007, so the default date is October 14, 2007 (id. at 75). For the 7228 loan, Plaintiff notified Defendant of a purchase agreement breach on August 26, 2009, so the default date is September 25, 2009 (id. at 73).[3]

11. Upon reviewing the spreadsheet attached as an exhibit to Baker's declaration, the court notes that Plaintiff's prejudgment interest calculation for the 6119 loan contains a significant error.

---

[2] Plaintiff uses the figure $75.67 per day to calculate the total prejudgment interest that accrues on both loans from July 9, 2011 (the day after Plaintiff's latest damage calculation) to the date of the default judgment.

[3] Plaintiff's damage calculations use a default date of September 26, 2009 for the 7228 loan (Dkt. 68 at 4). Thus, Plaintiff is owed an extra day of prejudgment interest on the 7228 loan, which amounts to $21.34.

       Plaintiff's prejudgment interest calculation is divided into two time periods: (1) the time between contractual default and the date of liquidation; and (2) the date of liquidation to July 8, 2011, the latest date on which Plaintiff calculated its damages. For the 6119 loan, 230 days passed between default and liquidation. At $54.33 in interest per day, that amounts to $12,495.90 in prejudgment interest for this time period. However, Baker's spreadsheet calculates $17,672.52 in prejudgment interest for this period (Dkt. 68 at 5, Row 2, Col. 24). Accordingly, Plaintiff's requested damage award should be reduced by $5,176.62, which is the difference between these two amounts.

12. Plaintiff's proposed judgment requests $400,018.21 in total contractual damages and prejudgment interest through July 8, 2011. In light of the corrections described above, this amount should be reduced to $394,862.93 in damages through July 8, 2011 with prejudgment interest accruing at a rate of $75.67 per day.[4]

13. Plaintiff is entitled to recover its attorney's fees under the terms of the purchase agreements. Plaintiff is requesting a total fee award of $47,568.06. This amount represents 166.78 hours spent on the case by five attorneys and two paralegals from the law firm of Akerman Senterfitt ("Akerman"). Plaintiff's motion for entry of default judgment includes ten pages of detailed billing records and an affidavit from one of its attorneys attesting to the reasonableness of the requested hourly rates. Akerman staffed the case with attorneys who practice in markets other than Tampa, including New York City and Denver, Colorado. Plaintiff's attorney's fees affidavit explains that this was because Plaintiff is pursuing similar

---

[4] Unless Plaintiff disagrees with the corrections, an amended proposed default judgment shall be filed.

cases in markets across the country.

14. Plaintiff's attorney's fees affidavit states that the "Billed Value/Fees Requested" column on the billing records shows the amounts billed after negotiated discounts (Dkt. 61 Ex. 2 at 4). The affidavit further states Plaintiff has decided not to seek reimbursement for certain tasks, and the corresponding "Billed Value/Fees Requested" columns for these tasks have been assigned a zero value.

15. With the exception of attorney Keith Costa, who practices in New York, Plaintiff is requesting hourly rates for its attorneys that range from $269.10 to $340.36 per hour. These hourly rates are reasonable.

16. Attorney Costa billed 1.3 hours on the case at a hourly rate of $639.00. Plaintiff acknowledges that Mr. Costa's hourly rate is significantly higher than the other attorneys on the case, but Plaintiff states that his rate is reasonable in light of his 28 years of legal experience in bankruptcy law and his notable government work experience. The court notes that two of Mr. Costa's billing entries representing 1.7 hours have been assigned a zero value, and Plaintiff is not requesting compensation for these entries. In view of Mr. Costa's experience and Plaintiff's decision to strike two of his billing entries, the court finds that the time spent by Mr. Costa on the case is reasonable and compensable at the requested hourly rate.

17. The bulk of the time billed on the case – 113.93 hours – was billed by attorney Jennifer Rubin, an attorney in Akerman's New York office and the attorney with the lowest billing rate: $269.10 per hour. Attorney Rubin became licensed to practice law in New York and Illinois in 2004.

18. The two other attorneys who spent significant time on the case are Justin Balser and Patrick J. Walsh. Attorney Balser, who billed 24.95 hours at a hourly rate of $312.80, has over ten years of legal experience and is licensed to practice law in California, Arizona, and Colorado. Attorney Walsh, who billed 19.9 hours on the case at a hourly rate of $337.50, became licensed to practice law in New York in 2001 and in Florida in 2008, and he formerly worked in-house at Plaintiff's subsidiary, Aurora Loan Services.

19. The billing records sufficiently describe discrete tasks underlying each billing entry. Furthermore, several of the billing entries have been assigned a zero value, and Plaintiff is not seeking compensation for those entries. At the evidentiary hearing, Plaintiff's attorney stated that Plaintiff is not seeking compensation for costs associated with this litigation.

20. Although Defendant ultimately defaulted, this case was actively litigated for over a year. The parties engaged in discovery, filed dispositive motions, and Plaintiff established Defendant's liability through summary judgment. Thus, the time spent on the case was reasonable.[5] Also, it does not appear that Plaintiff seeks attorney's fees for any time expended after May 4, 2011, when the Clerk entered Default against Defendant. Subsequent to that date, Plaintiff filed a motion for entry of a default judgement and attended an evidentiary hearing on the matter.

### **Conclusions of Law**

When a party fails to defend an action, the clerk must enter that party's default. Fed. R. Civ.

---

[5] For example, approximately thirty hours for a total of $8,329.50 was billed for research and preparation of the motion for summary judgment, including exhibits (Dkt. 61 Ex. 2 at 13-14). The motion was thirty pages long, cited numerous legal authorities, and included thirteen exhibits. Considering the issues presented and the complexity of the case, this is a reasonable activity.

P. 55(a). Upon default, the court customarily takes evidence or considers facts from the record in order to "fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 12 (1944); see also Fed. R. Civ. P. 55(b)(2). The court "has an obligation to assure that there is a legitimate basis for any damage award it enters, and to assure that damages are not awarded solely as the result of an unrepresented defendant's failure to respond." Anheuser-Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003); see also United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam) (noting that a default judgment may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation).

**1.     Contract Damages**

Under New York law, damages for breach of contract should put the aggrieved party in as good a position as he or she would have occupied had the breaching party fully performed. Wechsler v. Hunt Health Sys., Ltd., 330 F. Supp. 2d 383, 424 (S.D.N.Y. 2004).

**2.     Prejudgment Interest**

When a recovery is based on state law, state law controls any award of prejudgment interest. See Nelson v. Greater Gadsden Hous. Auth., 802 F.2d 405, 409 (11th Cir. 1986). In an action for breach of contract under New York law, prejudgment interest is recoverable as of right. Wechsler, 330 F. Supp. 2d at 434; see also N.Y. Civ. Prac. L. & R. § 5001(a) (McKinney 2007). Prejudgment interest accrues at a rate of 9% per annum. N.Y. Civ. Prac. L. & R. § 5004 (McKinney 2007); see also Wechsler, 330 F. Supp. 2d at 434-35. In New York, prejudgment interest accrues from "the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." N.Y. Civ. Prac. L. & R. § 5001(b) (McKinney

2007).

### 3. Attorney's Fees

In evaluating Plaintiff's request for attorney's fees, the court uses the lodestar, which is the number of reasonable hours spent working on the case multiplied by a reasonable hourly rate. See Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam). The court must also determine whether an adjustment to the lodestar is necessary based on the results obtained. See ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The fee applicant also bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) (citation omitted). The court may consider direct evidence of rates for similar services or opinion evidence about rates as well as its own expertise and judgment. Id. at 1299-1300.

"Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436). Further, the court itself is "an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Norman, 836 F.2d at 1303 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)).

The court is persuaded that Plaintiff's attorneys exhibited proper billing judgment and that Plaintiff's attorney's fee request represents a reasonable amount of hours spent on the case at

reasonable hourly rates. The undersigned recommends that Plaintiff be awarded the full amount of attorney's fees requested.

## Conclusion

Plaintiff's request for damages, prejudgment interest, and attorney's fees is supported by a sufficient factual basis (except as noted above) and proper legal principles. Plaintiff is also entitled to post-judgement interest under 28 U.S.C. § 1961(a). Accordingly, and upon consideration, it is **RECOMMENDED** that:

(1) Plaintiff's **Motion for Final Default Judgment and Attorneys' Fees** (Dkt. 61) be **GRANTED** to the extent that considering the exhibits in the record and the testimony presented, the preponderance of credible evidence demonstrates that Plaintiff should be awarded damages in the amount of $394,862.93 through July 8, 2011 with prejudgment interest accruing at a rate of $75.67 per day. Further, Plaintiff should be awarded attorney's fees in the amount of $47,568.06.

(2) Plaintiff's proposed **Default Final Judgment** (Dkt. 69 Ex. 1) be adopted except that the amount of contractual damages and prejudgment interest be reduced from $400,018.21 to $394,862.93 through July 8, 2011.

**Dated: August 12, 2011**

ELIZABETH A JENKINS
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge
Pro Se Defendant